UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

NANCY COLON,

                                     Plaintiff,     **COMPLAINT**

                   -against-             13 CV. 49 (SAC) (FM)

THE CITY OF NEW YORK; SUPERVISOR POLICE    ECF Case
OFFICER JOHN DOE # 1; P.O. DOUGLAS ROME, Shield
#31085; SGT. JOHN OCONNELL, Tax #937204; P.O.
JOHN DOE #1-2; the individual defendants sued    Jury Trial Demanded
individually and in their official capacities,

                               Defendants.

------------------------------------------------------------------------X

## PRELIMINARY STATEMENT

        1.     This is a civil rights action in which plaintiff seeks relief for the violation

of her rights secured by 42 U.S.C. § 1983, and the First, Fourth, Fifth, Sixth, and Fourteenth

Amendments to the United States Constitution.  The claims arise from an incident, which

occurred on or about May 29, 2012.  During the incident the City of New York and members of

the New York City Police Department ("NYPD") subjected plaintiff to, among other things,

false arrest, excessive force, unlawful search and seizure, unconstitutional conditions of

confinement, retaliation for free speech, conspiracy, and implementation and continuation of an

unlawful municipal policy, practice, and custom.  Plaintiff seeks compensatory and punitive

damages, declaratory relief, an award of costs and attorney's fees, and such other and further

relief as the Court deems just and proper.

## JURISDICTION & VENUE

2.    This action is brought pursuant to 42 U.S.C. §§ 1983, and the First,

Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.  Jurisdiction

is conferred upon this Court by the aforesaid statutes and 28 U.S.C. §§ 1331 and 1343.

3.    Venue is proper here pursuant to 28 U.S.C. §1391 because some of the

acts in question occurred in New York County, and the City of New York is subject to personal

jurisdiction in the Southern District of New York.

## PARTIES

4.    Plaintiff  Nancy Colon Green is a resident of the State of New York, New

York County.

5.    Defendant City of New York is a municipal corporation organized under

the laws of the State of New York, which violated plaintiff's rights as described herein.

6.    Defendant Supervisor Police Officer John Doe # 1 is a New York City

Police supervisor employed with the 10th Police Precinct, located in New York, New York who

violated plaintiff's rights as described herein.

7.    Defendant P.O. Douglas Rome is a New York City Police Officer

employed with the 10th Police Precinct, in New York, New York who violated plaintiff's rights

as described herein.

8.    Defendant Sgt. John Oconnell is a New York City Police Officer

employed with the 10th Police Precinct, located in New York, New York who violated plaintiff's

rights as described herein.

9.      Defendant Police Officer John Doe # 1-2 are New York City Police Officers employed with the 10th Police Precinct, located in New York, New York who violated plaintiff's rights as described herein.

10.     The individual defendants are sued in their individual and official capacities.

## STATEMENT OF FACTS

11.     On May 29, 2012, at approximately 6:45 a.m. in the lobby of 310 E. 4th Street, New York, New York, defendants Supervisor P.O. John Doe # 1, P.O. Douglas Rome, Sgt. John Oconnell, and P.O. John Does # 1-2, at times acting in concert and at times acting independently, committed the following illegal acts against plaintiff.

12.     Plaintiff had just left her apartment and on her way to work when entered the lobby area and was ordered to "come here" by a man wearing a polo shirt and who was standing in the presence of two of her neighbors. Plaintiff asked her two neighbors "what was going on" and they responded that they did not know. Plaintiff then started to walk away when the same man (later turned out to be a police officer) ordered plaintiff not to move and to stay put. Plaintiff informed the male that she was going to be late for work but he simply ordered her to "stand here and don't move."

13.     The unidentified police officer then began to ask each of her neighbors their apartment numbers which they provided to the unidentified police officer. Plaintiff was then asked her apartment number which she provided. The unidentified police officer then told plaintiff's neighbors to leave and ordered plaintiff to "stay here, don't move." Plaintiff asked what was going on and the unidentified police officer responded, "do you have a son" to which plaintiff answered yes. The unidentified police officer then asked whether he was upstairs and

3

plaintiff asked what was going on.  In response to plaintiff's question, the unidentified police

officer demanded Plaintiff's keys but plaintiff asked for identification and demanded to know if

he was a police officer and from what precinct.  The unidentified police officer continued to

ignore plaintiff's questions and demanded her keys.  The unidentified police officer then showed

plaintiff a picture of her son and demanded, "gimme the keys".

       14.    As plaintiff was standing there, an officer wearing a police shield entered

the lobby area and the unidentified male said to him, "she won't give me her keys".  Realizing

for the first time that he was a police officer, Plaintiff offered her apartment keys.  The officer

wearing the shield stated, "too late, arrest her and get her out of here.  We'll just knock the damn

door down."  Plaintiff observed several police officers run up the stairs as she was handcuffed

and escorted out of the building by the officer.

       15.    Plaintiff was placed inside a police van with two uniformed officers and

immediately asked that she be allowed to call her place of employment.  She was told "no" and

when plaintiff requested that they loosen the handcuffs because they were too tight, she was

simply ignored.  Plaintiff was made to sit inside the police van, with the engine running from

approximately 7:00 a.m. until 12:00 p.m. when she frantically woke up the sleeping officers after

she noticed smoke coming from the font of the van.  While one officer turned off the engine and

opened the hood of the van, the second officer escorted plaintiff to the back of a police car and

she was subsequently transported to the 10th Precinct.  Plaintiff was searched and her purse

seized and searched before she was placed inside the police van.

       16.    When P.O. John Doe #1 ordered Plaintiff to "come here" and commanded

plaintiff to stand in place and not to move, he did so without reasonable suspicion or probable

cause.

17.     Once plaintiff was confronted, she was not free to disregard the defendants' orders, walk away or leave the scene.

18.     Plaintiff complied with this illegal order, and P.O. John Doe #1 took plaintiff's purse from her possession and searched the contents of plaintiff's purse.

19.     During the search of plaintiff's purse by P.O. John Doe #1, P.O. Supervisor John Doe #1, ordered P.O. John Doe #1 to arrest Plaintiff and to get her out of there. By the time plaintiff was escorted to a waiting police van, Supervisor P.O. John Doe # 1, P.O. John Doe #1-2, ascended the stairs to Plaintiff's apartment and commenced a search of Plaintiff's apartment.

20.     Defendants found no items on plaintiff's person that justified plaintiff's arrest.

21.     Thereafter, defendants Supervisor P.O. John Doe # 1, P.O. John Doe #1-2, P.O. Douglas Rome without consent, an arrest warrant, a lawful search warrant, probable cause, or reasonable suspicion that plaintiff had committed a crime falsely arrested plaintiff.

22.     During the arrest of plaintiff, defendants Supervisor P.O. John Doe # 1, P.O. John Doe #1-2, and P.O. Rome committed excessive force against plaintiff, by maliciously, gratuitously, and unnecessarily twisting plaintiff's arms, and placing excessively tight handcuffs on plaintiff's wrists.  When plaintiff inquired as to why she was being arrested, she was told to "shut up".

23.     When plaintiff complained of defendants' misconduct and the tightness of the handcuffs, the loss of feeling in her hands, the loss of feeling in her fingers and, the swelling up of her fingers and wrists, her fingers turning blue and that she was experiencing lower back pain because of the positioning of her hands in handcuffs, in retaliation of her free speech,

without justification or cause, the defendants ignored plaintiff's calls for assistance. Those defendants who did not touch plaintiff witnessed these unlawful acts and failed to intervene and protect plaintiff.

24.     Plaintiff arrived at the 10th Precinct and was made to stand with the excessively tight handcuffs on her wrists attached to a rail for approximately one hour while they processed paperwork and other officers took pleasure in ridiculing her. After Plaintiff's arrest photo was taken, the handcuffs were removed briefly so she could be finger-printed. Plaintiff was then re-cuffed to a rail for another half an hour until about 1:30 p.m. on May 29, 2012 when she was subsequently transported to Central Booking.

25.     While attached to the rail at the 10th Precinct, plaintiff was subjected to depraved, filthy, and inhumane conditions of confinement, including temperatures in the extremes, filthy floors and a cell that smelled of urine and vomit. Plaintiff asserts that at the 10th Precinct cell, she was made to stand for two hours handcuffed to a rail while suffering excruciating lower back pain and the severe discomfort from being handcuffed to the rail. These conditions of the cell were severe and inhumane.

26.     Plaintiff's repeated requests for water and use of a bathroom was ignored and was told, "you are leaving soon." Those defendants who heard plaintiff's complaints and observed this situation, failed to intervene and assist plaintiff.

27.     The officers at the Precinct looked the other way at these dangerous conditions, and ignored plaintiff who sought their assistance.

28.     Defendant Supervisor P.O. John Doe # 1 supervised P.O. Rome, P.O. John Does # 1-2 in the above-detailed unlawful conduct, including approving plaintiff's false arrest.

29.     While plaintiff was incarcerated at the Precinct being processed for a later arraignment, the defendants Supervisor P.O. John Doe # 1 supervised P.O. Rome and P.O. John Does # 1-2, pursuant to a conspiracy, falsely and maliciously told the New York County District Attorney's Office that plaintiff had committed several crimes.

30.     Defendants intentionally, knowingly and purposely provided false statements and information regarding plaintiff's conduct, to cover up that they seized plaintiff without probable cause or reasonable suspicion.

31.     Defendants acted with malice by initiating the above-stated false arrests in an effort to have plaintiff maliciously prosecuted, to cover up that they stopped plaintiff without probable cause or reasonable suspicion.

32.     Defendants lacked probable cause to believe the above-stated false arrest could be maliciously prosecuted.

33.     The above-stated arrest caused a sufficient liberty restraint on plaintiff.

34.     Plaintiff was transported from the 10th Precinct while handcuffed with her hands behind her back.  The handcuffs were extremely tight, and with a persistent lower back pain, made it difficult to sit in the police car without experiencing severe pain.  Plaintiffs request to handcuff her with her hands in front or to loosen the handcuffs were ignored.

35.     Upon arrival at Central Booking sometime before 2:00 p.m. on the afternoon of May 29, 2012, Plaintiff was advised that she had missed lunch.  Plaintiff was given no food or water during the entire time she was held at Central Booking.  Plaintiff was in custody at Central Booking from approximately 2:00 p.m. on May 29, 2012 and remained at Central Booking up until approximately 9:00 p.m. on May 29, 2012 when she was released without seeing a judge.  Plaintiff was advised that the New York County District Attorney had declined

to prosecute her for the false charges brought against her. From the time of Plaintiff's arrest until her release, Plaintiff was denied food and water.

36.     Plaintiff's Central Booking jail cells were infested with, among other things, rodents and roaches. Moreover, there was human and nonhuman waste on the floor and one single toilet that did not work that numerous arrestees in a cell were forced to share without privacy. The toilet was clogged and overflowed onto the floor. Toilet paper and bedding were nonexistent. There was no access to clean drinking water. Temperatures were in the extremes. The walls of the cell were dilapidated. The guards and personnel assigned to Central Booking looked the other way at these dangerous conditions, and ignored arrestees who sought his assistance including a request for food and water.

37.     Plaintiff did not engage in any conduct that obstructed the police from doing their job or possessed any contraband that would warrant her arrest.

38.     Plaintiff did not engage in suspicious, unlawful or criminal activity prior to or during the above stated incidents.

39.     The individual defendants did not observe plaintiff engaged in suspicious, unlawful, or criminal conduct at any time prior to or during the above stated incidents.

40.     At no time prior to or during the above stated incidents were the individual defendants provided with information or were in receipt of a credible or an objectively reasonable complaint from a third person that plaintiff had engaged in suspicious, unlawful or criminal conduct.

41.     The aforesaid events were not isolated incidents. Defendants City of New York and P.O. Supervisor John Doe # 1 have been aware (from lawsuits, notices of claim and complaints filed with the Civilian Complaint Review Board) that many of the NYPD's and

8

officers are insufficiently trained on the proper basis to make an arrest, investigate incidents, and how to treat innocent and/or uninvolved individuals.  City of New York and P.O. Supervisor John Doe # 1 are further aware that such improper training has often resulted in a deprivation of civil rights.  Despite such notice, City of New York and P.O. Supervisor John Doe # 1 have failed to take corrective action.   This failure caused the officers in the present case to violate the plaintiff's civil rights.

42.     Moreover, City of New York and P.O. Supervisor John Doe  # 1 were aware prior to the incidents that the defendant officers lacked the objectivity, temperament, maturity, discretion, and disposition to be employed as officers.  Despite such notice, City of New York and P.O. Supervisor John Doe # 1 have retained these officers, and failed to adequately train and supervise them.

43.     As a result of defendants' actions, plaintiff experienced personal and physical injuries (including swollen wrists, bruises, and contusions) fear, embarrassment, humiliation, an invasion of privacy, pain and suffering, damage to reputation, loss of income and emotional distress.

44.     After being in custody for many hours, the New York County District Attorney declined to prosecute plaintiff for the charges brought against plaintiff by the defendants, ending in a favorable termination.

45.     The individual defendants acted in concert committing these illegal acts against plaintiff.

## FEDERAL    CLAIMS    AGAINST    THE INDIVIDUAL DEFENDANTS

46.     Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

47.     The conduct of defendant officers, as described herein, amounted to false arrest, excessive force, unlawful search and seizure, unconstitutional conditions of confinement, retaliation for free speech, conspiracy, and implementation and continuation of an unlawful municipal policy, practice, and custom.

48.     The conduct of the defendant officers, as described herein, violated plaintiff's rights under 42 U.S.C. §§ 1983, the First, Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, by committing false arrest, excessive force, unlawful search and seizure, unconstitutional conditions of confinement, retaliation for free speech, conspiracy, and implementation and continuation of an unlawful municipal policy, practice, and custom.

49.     Defendants acted under pretense and color of state law and their individual and official capacities and within the scope of their employment.  Said acts by said defendants were beyond the scope of their jurisdiction, without authority or law, and in abuse of their powers, and said defendants acted willfully, knowingly, and with the specific intent to deprive plaintiff of his rights secured by 42 U.S.C. § 1983, the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

50.     As a direct and proximate result of the misconduct and abuse detailed above, plaintiff experienced personal and physical injuries, pain and suffering, fear, an invasion of privacy, psychological pain, emotional distress, mental anguish, embarrassment, humiliation, and financial loss.

51.     The plaintiff is also entitled to receive punitive damages because defendants' actions were motivated by extreme recklessness and indifference to the plaintiff's rights.

10

**FEDERAL CLAIMS AGAINST THE CITY OF NEW YORK**

52.    Plaintiff repeats and re-alleges all the foregoing paragraphs as if the same were fully set forth at length herein.

53.    The City of New York directly caused the constitutional violations suffered by plaintiff.

54.    Upon information and belief, the City of New York was aware from notices of claim, lawsuits, complaints, and from NYPD's own observations, that the officers involved in the present case were unfit to be officers, and that it was highly likely that they would commit the acts alleged in the present case.

55.    Nevertheless, the City of New York exercised deliberate indifference by failing to take remedial action.  The City of New York failed to properly train, re-train, supervise, discipline, monitor, and improperly utilized and retained these officers.   Moreover, the City of New York failed to adequately investigate prior complaints against the officers and created a culture where officers can harass, and violate individuals without consequence.  Indeed, when individuals file complaints against officers, the City has a practice of failing to substantiate or address the complaint, even under circumstances where the complaint is corroborated and credible, and the account given by the officer is unworthy of belief.

56.    The aforesaid conduct by the City of New York violated plaintiff's rights under 42 U.S.C. § 1983; the First, Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

57.    Moreover, the aforesaid conduct by the City of New York amounted to negligent hiring, training, monitoring and retention of incompetent employees.

11

58.    As a direct and proximate result of the City of New York's misconduct and abuse detailed above, plaintiff experienced personal and physical injuries, pain and suffering, fear, psychological pain, emotional distress, mental anguish, embarrassment, humiliation, and financial loss.

**WHEREFORE**, plaintiff demands a jury trial and the following relief jointly and severally against the defendants:

a.    Compensatory damages in an amount to be determined by a jury;

b.    Punitive damages in an amount to be determined by a jury;

c.    Costs, interest and attorney's fees;

d.    Such other and further relief as this Court may deem just and proper, including injunctive and declaratory relief.

DATED:    Brooklyn, New York
            December 30, 2012

NATALI J.H. TODD, ESQ.
*Attorney for Plaintiff*
189 Montague Street, Suite 508
Brooklyn, New York 11201
(718) 797-3055
natali_todd@yahoo.com
By:

____s/_____
NATALI J.H. TODD, ESQ.